# THOMAS MULLAN

*vs.*

## JOSEPH A. McKELLIP, Assignee.

*Sale of Cement—State Road Work—Release—Evidence—*
*Prayers.*

That a contractor on a State road relinquished work thereon, under an agreement with the State Roads Commission that the Commission would complete the work at the contractor's expense, the contractor still to have the privilege of furnishing the material, did not terminate the contract, so that a company which had contracted with such contractor to furnish the cement necessary to complete the contract was relieved from its obligation in that regard.      p. 497

In an action by a cement manufacturer to recover for cement furnished defendant, a contractor on a State road, *held* that it was error to exclude, on plaintiff's objection, a written contract between the State Roads Commission and defendant, wherein the Commission agreed to complete the work at the contractor's expense, the defendant's contention being that that contract did not affect its right to the continued delivery of cement by plaintiff, and that plaintiff's failure to continue deliveries caused him loss.      p. 498

In an action by a cement manufacturing company to recover for cement furnished, wherein defendant asserted a loss by reason of plaintiff's refusal to deliver all the cement called for by its contract, while plaintiff contended that defendant had orally released plaintiff from the contract after delivery of part, it was error to grant plaintiff's prayer that should the jury find the facts therein stated, which did not include the existence of such release, plaintiff was entitled to recover the contract price for the cement delivered, without abatement.      p. 498

That plaintiff's second prayer, which was granted, required the jury to find all the facts mentioned in his first prayer, also

granted, and also another fact essential to plaintiff's recovery, did not cure the omission in the first prayer of that essential fact, the two prayers being in no way connected.          p. 499

*Decided January 17th, 1923.*

Appeal from the Superior Court of Baltimore City (STANTON, J.).

Action by Joseph A. McKellip, assignee of Tidewater Portland Cement Company, against Thomas Mullan on an account for cement sold and delivered. From a judgment for plaintiff, defendant appeals. Reversed.

The following prayers, offered in behalf of plaintiff, were granted:

*First.*—If the jury believe that the defendant entered into the contract with Tidewater Portland Cement Company, offered in evidence, and that the latter executed to the plaintiff the assignment of its claim under said contract offered in evidence, and if they further find that the assignor of the plaintiff, upon the orders of the defendant, delivered to the defendant under said contract the materials mentioned in the account attached to the declaration in this case and offered in evidence, then the plaintiff, as assignee of the said company, is entitled to recover the contract price therefor, with interest in their discretion, less the amount ($169.67) of the judgment heretofore rendered in this case, and under the evidence, without any further abatement therefrom.

*Second.*—If the jury find the facts set forth in the plaintiff's first prayer, then the plaintiff, as assignee of the said company, is entitled to recover the amount claimed, interest to be allowed in their discretion, less the amount ($169.67) of the judgment heretofore rendered in this case, and without further abatement therefrom, if they further find that on or about July 1st, 1920, the defendant and plaintiff's assignor

mutually agreed to release each other from any and all obligations under said contract.

*Seventh.*—The plaintiff prays the court to instruct the jury that under the pleadings and evidence in this case the defendant is not entitled to any abatement from the amount claimed in this action under the declaration by reason of damages claimed to have been sustained on account of an alleged breach of the contract offered in evidence.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*John D. Nock,* with whom were *Benson, Nock & Rowe* on the brief, for the appellant.

*Seymour O'Brien* and *Louis B. Bernei,* with whom was *William J. O'Brien* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appeal in this case is from a judgment recovered by the appellee against the appellant in the Superior Court of Baltimore City.

Thomas Mullan, the appellant, entered into an agreement with the State Roads Commission to build a concrete road upon what is known as the "Rising Sun-Porter Bridge Road," of Cecil County, Maryland. The contract so made was designated and known as "Contract No. Ce.-28.

On the 1st day of December, 1919, Mullan contracted in writing with the Tidewater Portland Cement Company, a corporation, for the purchase of cement to be used "exclusively," in the construction of the State Road, "between the date of the contract and the 15th day of June, 1920."

The amount of cement required for said work was estimated by the buyer and seller at five thousand six hundred and twenty (5,620) barrels, but by the terms of the contract the seller was not required to "furnish more than the quantity

of cement actually furnished by the buyer and used on said work"; the cement was to be delivered in cotton bags, four of them making a barrel, and the price to be paid therefor under the contract was $2.74 per barrel, but, by the terms of the contract, this amount was subject to an increase or reduction if the bags, valued in the contract at fifteen cents each, increased or diminished in value.

Under this provision of the contract the price per barrel for the cement was increased from $2.74 to $3.14 with the apparent assent or approval of the appellant; and the cement that was delivered under the contract was billed to him at the last named price.

The record discloses that the appellant, on the 23rd day of April, 1920, wrote to the Tidewater Portland Cement Company saying:

"Kindly ship me to Rising Sun, Md., on May 1st, one car of cement, and on May 7th, one car of cement to same place."

On May 13th, 1920, he wrote the company the following letter:

"Tidewater Portland Cement Co.

"Gentlemen:

"In looking over your contract for cement to be delivered at Rising Sun, Md., I find that the time expires on June 15th, 1920.

"I ordered on April 23rd one car to be shipped on May 1st, and another on May 7th. I also telephoned your office a few days ago to ship another car, making a total of three cars on order.

"Of course, you realize that these shipments, being delayed as they are, it will be impossible for me to finish my work before June 15th. I realize the unusual conditions existing at the present time, but think that you should extend this contract until such a time as I will be able to use all the cement I will require on this contract.

"I do not think it will take as much cement as the contract calls for, but I would not want you to ship it all to me at one time, as it would put me to an additional expense of handling same.

"I have enough storage capacity to take it all, and if there is going to be any trouble about delivering same at the contract price let me know at once, and I will take care of it before my time expires.

"Let the three cars you have on order be shipped about three days apart, starting the first car on receipt of this letter.

"Awaiting your reply and thanking you in advance, I am,

"Very respt. yours,

"(Signed) Thos. Mullan."

He again wrote the company on May 24th, 1920, saying:

"Kindly ship me at once car of cement to Rising Sun, Maryland, to apply on contract. Kindly reply to my letter of May 13th, 1920."

On June 3rd, 1920, the appellant again wrote the company asking that four cars of cement be shipped to him, one on each of the following days: June 5th, June 8th, June 11th and June 14th. This letter was followed by one of June 10th in which the appellant said:

"It will take about 7,500 bags of cement to complete my contract at Rising Sun, Md., besides the four cars on order. I am in a position to accept all of this cement at once if it is convenient to you, but if you prefer to ship some of it now and the balance in the month of July, it would be satisfactory to me, provided I get same at my contract price."

In reply to the appellant's letter of the 10th, E. R. Stapleton, manager of the cement company, wrote saying:

"Mr. Thomas Mullan,

"4001 Greenmount Avenue,

Baltimore, Maryland.

"Dear Sir:

"We have your letter of June 10th, stating that it will take about seventy-five hundred bags of cement to complete your contract at Rising Sun, beside the four cars on order; further, that you are in position to accept all of this cement at once.

"On reference to your contract covered by our sales order No. 8261, we find that six hundred ninety barrels have been shipped, same going forward in two cars on May 7th and 28th. In addition to this, we have booked for your account six cars, or a total of thirteen hundred eighty barrels, which have not as yet gone forward. This amount, added to the six hundred ninety barrels above mentioned as having been shipped, would make a total of two thousand seventy barrels.

"Please advise if we are correct in our understanding that in addition to the six hundred barrels you will require seventy-five hundred bags, or eighteen hundred seventy-five barrels, making a total of two thousand five hundred sixty-five barrels.

"We are not quite clear on this matter, and will ask you to put us right at your earliest convenience. Please state as specifically as possible how many more barrels you will require in addition to the six hundred ninety barrels which have already gone forward.

"Yours very truly,

"(Signed) E. R. Stapleton,

"General Sales Agent."

Because of the appellant's difficulty in getting cement, sand, and gravel, as needed in the construction of the road, caused in part by the embargo laid thereon by the railroad company, and because of his inability to procure labor in sufficient numbers to enable him to progress with the work

as fast as he should have done under the contract for the building of the road, an agreement was made between him and the State Roads Commission by which he was relieved of part of the work, which he, under the contract, had agreed to do. The agreement so made was in writing and is as follows:

"State Roads Commission,

"Baltimore, Maryland, June 30, 1920.

"It is hereby agreed between the State Roads Commission and Thomas Mullan, contractor on the Rising Sun-Porter's Bridge Road, Contract No. Ce-28, in Cecil County, that the State Roads Commission will take possession of all his equipment on the ground, excluding teams and trucks, and complete the work according to the contract and specifications, and at the completion make the final estimate in the regular way, and pay to the contractor the total of this final estimate, less three thousand, nine hundred dollars ($3,900.00), which is to be deducted because of the expense to which the State will be put by reason of completing the contract at increased prices.

"The material now in transit and on the ground, which is taken over by the State, will be paid for at the following rates:

"Cement at $3.80 per barrel at the siding, to be unloaded and hauled by us, bags to be returned by us, and credit so taken.

"Sand at $3.00 per ton.

"Stone at $3.50 per ton, measurements to be made in the finished work.

"The contractor is to complete all headwalls and to make the shoulders on the entire job, but the State Roads Commission will do the excavation and filling necessary to make the subgrade for the concrete, and lay all the roadway surfacing.

"For as much cement as can be purchased after this date at the contractor's price of $3.14 per barrel f. o. b. railroad siding, at point of delivery, he will be

allowed additional compensation to the extent of sixty-six cents (66c.) per barrel.

> "State Roads Commission,
>> "(Signed)  J. W. Mackall,
>>>                          "Chairman.
>>    "(Signed)  Thos. Mullan,
>
> "Witness:                          Contractor.
>>  "R. W. Reindollar."

On July 1st, the next day after the execution of the aforesaid contract with the State Roads Commission, the appellant called upon the Tidewater Company, as he says, "to make sure he was to get the balance of the cement" that he had ordered from the company to be used in the construction of the road, for at that time there had been shipped to him only one thousand one hundred and fifty barrels. His conversation on that occasion was with Mr. Stapleton, the manager of the company.

Mr. Stapleton, in his evidence at the trial of the case, stated that Mullan told him that he had had "a great amount of trouble with his work getting labor * * *, that he had a lot of trouble also getting stone and sand, and the railroad companies were laying embargoes, and he was sick and tired of the contract, and was going to throw it up and give it up entirely, and he said, 'Now, I think I can make an arrangement with Mr. Hirshberger to take over this contract and complete it, and I would like to get this cement coming to me on the contract for Mr. Hirshberger.' I said, 'No, Tom, I won't do that at all; your contract does not provide for it; there is no such arrangement in existence, and manufacturing conditions would not permit of my doing that.' The conversation was possibly half an hour or three-quarters of an hour long; but to the best of my memory that was the substance of the conversation. At the end of the conversation Mr. Mullan said, 'Well, you will not do it.' I said, 'No, Tom, I cannot do it; I cannot possibly do it.' He said, 'I guess I will have to give it up.' I said, 'All right, write a

letter confirming that.' He said, 'What is the best price which you will give me after confirmation.' I said, 'I will take that under consideration and write you this afternoon.' The market conditions were simply frightful, because of war conditions, and the railroad conditions, and coal conditions, and so forth. It was not a matter that I· felt that I could render my judgment in regard to, and after careful deliberation on the subject, after Mr. Mullan had gone out, and in line with our conversation with Mr. Mullan, my letter of July 1st was written; nothing whatever was said about the State Roads Commission or the Broad Creek Construction Company."

Upon cross-examination, Stapleton was asked: "Why did you not let him have cement at his (Mullan's) price? He told you that you could send it in July. Why was it that you did not let him have it, the cement at the contract price? A. Simply, because in my best judgment his contract was terminated and the market conditions did not permit it."

The appellant in his evidence given in the trial of the case said: "I saw Mr. Stapleton after making the agreement with the State Roads Commission to do this work, or have another contractor to finish the concreting on this work, and I told Mr. Stapleton that I ·could sell the cement, all the cement I had coming to me under my contract, at a price of sixty-six ·(66) cents above the contract price with his company * * .*. I also told Mr. Stapleton I had been delayed considerably in this contract, because of not getting cement and not being able to put down concrete without cement; we talked over the conditions as they were at that time, the railroad and the coal troubles. He claimed coal had gone up so in price that it was necessary to raise the price of cement. He never said that he would not ship me the cement but he never promised that he would."

Mullan, both upon cross-examination and in reply to questions asked by the court, denied that he had given up his job or his contract with the State Roads Commission to build the

road, but he said in connection therewith "I had been delayed in getting cement and the railroad had an embargo on stone and sand at that time and the State Roads Commission wanted the job pushed faster and Mr. Mackall (chairman of the State Roads Commission) and I took it up and talked it over and we decided to get bids from some contractors who were not very busy at that time or had no job on their hands at all, and we got bids from several contractors, including not only Hirshberger, but the Broad Creek Construction Company, to whom the contract was awarded."

On the same day of the conversation, Stapleton wrote Mullan the following letter:

"Baltimore, Md., U. S. A., July 1st, 1920.

"Mr. Thomas Mullan,

"4001 Greenmount Avenue,

"Baltimore, Maryland.

"Dear Sir:

"With reference to our personal conversation this afternoon, and in accordance therewith, we are to consider your order (our No. 8261), Contract No. 4281 of December 6, 1919, expiring June 15th, 1920, as completed and cancelled by reason of limitation, and no further shipments are due thereunder.

"With this understanding only, we are offering you 2,335 barrels of Portland cement, in cloth for H. H. Hershberger at $3.64 a barrel, f. o. b. Rising Sun, Maryland.

"The cloth sacks containing the cement are not sold, but remain the property of the seller, and must not be sold or used other than as containers of cement manufactured by this company. The sacks are to be returned within ninety days from date of shipment, and an allowance of twenty-five cents will be made by us for each sack returned to our mill at Union Bridge, Maryland, in good condition, freight prepaid, and subject to our inspection and count. We will not accept sacks bearing brands other than our own, or sacks that have been wet or are otherwise worthless. Such sacks,

if received, will be held at your risk, subject to your order, for thirty days only.

"Should the cloth sack basis be changed during the life of this quotation, the right is reserved to adjust the delivered price accordingly, and the allowance for each good sack returned as aforesaid will be increased or decreased in accordance with said change in the cloth sack basis. All other terms and conditions as per contract.

"Terms for payment: Thirty days net, or five cents per barrel will be allowed as a cash discount for payment in full within ten days from date of invoice.

"It is distinctly understood that we are to make shipments in accordance with our ability to do so, railroad conditions, car shortage, and so on, considered.

"Kindly acknowledge receipt of this letter, and oblige,

"Yours very truly,
                    "(Signed) E. R. Stapleton,
                            "General Sales Agent."

It is not disclosed by the record that Mullan ever wrote the letter which Stapleton suggested he should write him confirming the alleged statement made to him that he (Mullan) was going to give up the job and to have nothing more to do with the construction of the road.

But in the record is found an agreement that two thousand barrels of the portland cement were required to complete the concreting on the Mullan contract for the State Roads Commission, and this was furnished by the Tidewater Portland Cement Company at $3.83 per barrel to the Broadcreek Construction Company, who obtained the contract to complete the work.

Mr. Mackall, who was placed upon the stand by the appellee, when asked if the contract had been terminated, said, "It had not been terminated, but Mr. Mullan's employment had been terminated," and when about to explain the distinction

between the termination of his employment and the termination of the contract, he was asked by the court: "The State Roads Commission reserved the right to complete the contract at the expense of the original contractor; that is what you mean? A. Yes, sir. Q. They had the right to put another man on to complete it at his expense? A. Yes, sir; terminated his employment, but not his contract."

The witness further said that the cement left upon the ground and in transit consigned to Mr. Mullan, amounting to six hundred and one barrels, was used in the completion of the road.

After the execution of the said agreement between the appellant and the State Roads Commission, no more cement was furnished the appellant by the Tidewater Portland Cement Company under its contract with him.

It had, however, hitherto furnished and delivered to the appellant thereunder eleven hundred and fifty barrels, which at $3.14 per barrel amounted to $3,124.90, but this amount had been reduced by payment to $1,324.67, and on the 1st day of February, 1921, the account was assigned by the Tidewater Portland Cement Company to the appellee, its treasurer, who on that day instituted suit thereon to recover said amount, which the appellant had refused to pay, claiming he was entitled to a rebate thereon, because of the loss suffered by him resulting from the cement company's refusal or failure to furnish him all the cement required to complete the road.

He, however, acknowledged that after allowance of the claim made by him he was indebted to the cement company in the sum of $169.67, and a judgment for that amount was entered against him in favor of the assignee.

The case proceeded to trial upon the balance claimed by the appellee, and resulted in the verdict for the plaintiff for the sum of $1,154, the amount so claimed, upon which a judgment therefor was entered. It was from that judgment that the appeal was taken.

In the trial of the case four exceptions were noted, three to the rulings of the court upon the evidence, and one upon the prayers.

The first exception was taken to the ruling of the court in refusing to admit in evidence, when Mullan was upon the stand, the written contract, between him and the State Roads Commission, relieving him of part of the work he was to do under his original contract; the second exception was to the ruling of the court in permitting Mr. Mackall to testify to the effect of this agreement, after it had been excluded in the former exception; and the third exception was to the ruling of the court thereafter refusing to admit the agreement when again offered.

The agreement involved in these exceptions, which we have herein fully set out, was executed by the appellant in his own right, and by Mr. Mackall for and on behalf of the State Roads Commission, and it is from this agreement that we must ascertain the character and extent of the changed relation of the parties, caused thereby, in respect to their original contract; and from it must also be ascertained whether the Tidewater Portland Cement Company, because of those changed relations, was released from the fulfilment of its obligation to deliver to the appellant the cement sold to him.

The chairman of the commission states what, in his opinion, was the effect of the contract upon the relations then existing between the commission and the appellant, by saying that it terminated his employment but not his contract. In this, however, he could not have been correct, for at most, the appellant's employment was only partially terminated, for by said agreement the appellant was to complete the work upon the "headwalls" and "shoulders" of the road, and was only relieved of the work of concreting and surfacing the road. But whether his employment was or was not terminated thereby is not the question to be determined in this case. The real question is: "Were the relations between the appellant and the commission, in respect to their original con-

tract, so changed as to release the Tidewater Portland Cement Company, under its contract with the appellant, from the fulfilment of its obligation to deliver to the appellant the cement sold to him thereunder?

The cement company, by its contract with the appellant, sold to him 5,620 barrels of cement to be used exclusively in the construction of the road, mentioned and described in the appellant's contract with the State Roads Commission, and nowhere else, between the date of the execution of the contract and the 15th day of June, 1920; subject, however, to the limitation that should the quantity of cement named be more than was required to do the work, then the company should "not be required to furnish more than the quantity actually furnished by the buyer and used on said work." The price per barrel to be paid therefor under the contract was $2.74, but this amount was subject to an increase or reduction according to the rise and fall thereafter in the value of the bags in which it was to be delivered. The terms of payment were thirty days net, with discount of five cents per barrel if invoice were paid in full within ten days of date of shipment. The contract, however, contained the provision that if the buyer failed to comply with the terms of payment, or violated any of the terms or conditions of the agreement; or if buyer's credit, in the opinion of the seller, became at any time unsatisfactory, the seller could, at its option, decline to make further deliveries under the contract, or require payment, with regular discount, or satisfactory security or guaranty that the invoice be promptly paid.

We have very carefully examined the provisions of the subsequent agreement of the appellant with the commission in connection with his contract with the Tidewater Portland Cement Company, and have been unable to discover in what way his relations with the commission, as to the work to be done by him under the original contract, released the cement company from the fulfilment of its obligation to deliver to him the cement that it had sold to him.

His liability under his first agreement with the commission still existed after the execution of the second agreement, as the completion of the work under the latter agreement was done at his expense, he being required to pay for the increased prices and charges therefor, and consequently he was interested in having the road completed at the least possible cost. By the express terms of that agreement he was allowed to continue to furnish the material, including cement, that was to be used in the completion of the road. This right was reserved to him, no doubt, for the very purpose of enabling him to use the cement and other materials he had bought at a price lower than that at which it could then be obtained, and we find nothing in the exercise of that right or privilege that is any way inconsistent or in conflict with any of the provisions of his contract with the cement company. The said agreement should, we think, have been admitted in evidence.

The reason assigned by the cement company, in its letter of July 1st, 1920, for its refusal to ship to appellant more cement, was that they regarded the contract "expiring June 15th as completed and cancelled by reason of limitation, and no further shipments are due thereunder." But this contention, we think, cannot be given serious consideration, in view of the company's delay and failure to deliver the cement when repeatedly urged to do so by the appellant within the time named in the contract. In fact, such claim of the plaintiff was not alluded to in the argument before us, nor does it appear to have been made in the trial of the case. The claim then made by the cement company, in justification of its refusal to furnish the balance of the cement, was that the appellant had abandoned his contract with the commission for the construction of the road, and had released it from its obligation under its contract with him.

Though the release, mentioned above, was the alleged justification for the refusal of the assignor of the appellee to deliver more of the cement to the appellant, the jury were told

by the appellee's first prayer that, should they find the facts therein stated, which did not include the existence of such release, the appellee was entitled to recover the contract price for the cement delivered, with interest in their discretion, less the amount ($169.67) heretofore rendered in this case, without any further abatement therefrom. It is true the second prayer required the jury to find all the facts mentioned in the first prayer, as well as the existence of said release, to entitle the plaintiff to recover, but this, we think, did not cure the defect in the first prayer.

The existence of such a release was a very important fact in the case, and without it the plaintiff was not entitled to recover. At least to the extent stated in the prayer. This prayer was in no way connected with the second prayer. As an instruction to the jury, it stood separately and alone, and the jury could well have thought, regardless of the requirement in the second prayer, if they found the facts mentioned in it, the plaintiff was entitled to recover, as therein stated.

We do not discover any serious defect in the second prayer upon the evidence admitted.

The objection urged against the plaintiff's seventh prayer, that it is too general, is not without force, and whatever may be said about this prayer upon the present state of the record, it should not have been granted, had the evidence been admitted which we have said should have been admitted.

For the errors mentioned, the judgment below will be reversed and a new trial awarded.

*Judgment reversed and new trial awarded,
with costs to the appellant.*